GUSTAVE GRIMSHAW and Another, Plaintiffs, *v.* CESARE GNUDI, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, February 27, 1930.

*Harry Wylan*, for the plaintiffs.

*William J. Ahearn*, for the defendant.

RAIMO, J.   This is an action instituted by the plaintiffs against the defendant for the recovery of money damages by reason of an automobile accident which occurred in the State of New Jersey while the defendant's car was being driven by a third person who had rented same from the defendant, the defendant, at the time being in business in the State of New Jersey, renting cars to the public under what is known as the U-Drive system, which is somewhat similar to the system in our State known as the Drive-Yourself.

As the accident upon which this action is brought occurred in the State of New Jersey, the court should be bound by the law of that State, and more particularly chapter 28 of the Laws of 1928 of the State of New Jersey, in evidence herein.

The facts are as follows: On April 17, 1928, the plaintiff Gustave Grimshaw, while driving his Cadillac automobile, in which the other plaintiff, Jeremiah Dunning, was a passenger, on the highway about two miles from Princeton, proceeding towards New York city, stopped same near a bridge.   Immediately in front of the plaintiff's automobile there had also been halted a wagon and a team of horses, so as to allow another automobile which was then approaching towards the plaintiff to pass over the bridge, which bridge was only wide enough for one vehicle to pass at a time. While so standing, the defendant's automobile, coming from the rear, ran into and damaged the automobile of the plaintiff, and then continued in towards the other side of the road, running into a stop sign which was imbedded in a concrete base in the roadway and knocking it over into the river.   Both plaintiffs claim personal injuries.   This testimony was not disputed or contradicted by the defendant.   The defendant testified that he had rented the automobile to the driver for a stipulated sum, and had no further control thereof, and seeks to absolve himself from liability.

The plaintiffs contend that the defendant is liable by both the common and statutory law of New Jersey, but I hold that the plaintiffs cannot recover under the common law, there being no question that the car was rented to a person who was regularly licensed to drive the same by the State of New Jersey, and I shall, therefore, disregard the plaintiffs' first contention:

Section 2 A of chapter 28 of the Laws of New Jersey, 1928, was in force when the accident occurred. It provides, so far as is material here, that every owner of U-Drive cars, renting them to lessees, must insure himself against liability imposed by the law against such owner for injury or death suffered by any person through the negligent maintenance, use or operation of such motor vehicle in that State, and that the insurance policy shall provide for the payment of any judgment rendered against such motor vehicle owner. By the same section, the policy is, as to the injured party, made incontestable.

The plaintiffs urge that the said statute imposes, by itself, a liability against the owner. The defendant contends that the words " liability imposed by law upon such owner " exonerate him, because neither the common nor the statutory law of New Jersey (including this statute) has ever imposed on him any liability.

Let us revert to some well-defined principles on the interpretation of statutes adopted in almost every State, including New Jersey. Interpretation must be guided by the intent of the Legislature (*O' Neill* v. *Johnson,* 99 N. J. Law, 317; 123 Atl. 538 ), which controls, even though the letter is plainly contrary thereto. (*Jensen* v. *Woolworth Co.,* 92 N. J. Law, 529; 106 Atl. 808; *United States* v. *Baltimore Post Co.,* [D. C.] 2 F. [2d] 761; affd., 268 U. S. 388.) New York has uniformly followed this doctrine that the intent of the Legislature must prevail even over the letter of the statute. A construction resulting in absurdity or futility must be shunned. (*Harris* v. *Bell,* [C. C. A.] 250 Fed. 209; affd., 254 U. S. 103.) Evils which the statute intended to remedy must be considered. (*Soden* v. *Trenton & Mercer County Traction Corporation,* 101 N. J. Law, 393; 127 Atl. 558.) When words are not explicit, the legislative intendment should be sought from the occasion and necessity of the law, the mischief felt, and the remedy in view. (*Matter of Merrill,* 88 N. J. Eq. 261; 102 Atl. 400.)

This is a remedial statute. I ascertain that it was first passed in 1926 as chapter 249; amended in 1927 by chapter 325 and repealed later by chapter 26 of the Laws of 1928. In 1928 it was enacted again as chapter 28, and amended in 1930 by chapter 330. The New Jersey Legislature has been discussing it four years and debated on it five times. Of course, I am taking notice of the

1928 law only. But did that Legislature, knowing that the owner was not liable (I must presume such knowledge), compel him to insure for no useful purpose? Did it really intend that? Have those gentlemen been wasting considerable time and breath just to provide for a farcical insurance policy, based on no liability of the assured? Indemnity avails only where there is liability. There can be no indemnity where there is no liability. Under the defendant's construction of the statute, we should then conclude that the Legislature of the State of New Jersey has seen fit to pass these acts for its yearly merriment. I am not in accord with such conclusion.

I believe that the act was intended to remedy an evil. U-Drivers are, as often as not, financially irresponsible. The act compels the owner of the U-Drive cars to insure and to pay any final judgment *rendered against such motor vehicle owner;* and these last words clearly indicate that the owner is intended to be the party defendant. Read from the statute the plaintiffs' redress against this defendant and you strike them helpless. The operator may or may not be financially good; but he is not insured. Levy against him is uncertain, while it is certain against the owner, because he is insured. Exonerate the defendant, and you make his compulsory insurance an idle gesture and brand the Legislature of the State of New Jersey as visionary Don Quixotes that have not once, but five times, futilely tilted against a ridiculous windmill. That would, indeed, be a *reductio ad absurdum.*

The only reasonable construction of the statute is that, in order to protect the public at large, it intends to create a statutory liability against the owner of U-Drive cars injuring third parties, while operated by lessees. Counsel have not taken the pains to furnish me with the history of the act, or with the legislative journals pertaining thereto; but we must all agree that its evident intent was to protect just such persons as these plaintiffs against such negligent operation as the lessee's in this case by such insurance policy as was taken here. I am aware that courts cannot make laws, but can only expound them. However, the purpose and scope of this act are so manifest that its undeniable intent must prevail over its letter. Even the rule of strict construction against statutes in derogation of the common law does not prevail against the avowed intent of the Legislature. (*State* v. *One Ford Automobile,* 151 Ark. 29; 235 S. W. 378.)

Judgment is, therefore, directed in favor of the plaintiff Gustave Grimshaw and against the defendant in the amount of $250; and I further direct judgment in favor of the plaintiff Jeremiah Dunning and against the defendant in the amount of $100, with costs.